# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | PLAINTIFF |
| v. | NO. 4:17CV00627 JLH |
| CRAIN AUTOMOTIVE HOLDINGS LLC | DEFENDANT |

## OPINION AND ORDER

Judith Vaughan began working for Crain Automotive Holdings, LLC in the fall of 2016. Vaughan suffers from anxiety, depression, and panic attacks, although no one at Crain knew this prior to the events giving rise to this lawsuit. Late in the day on Monday, January 30, 2017, Vaughan began experiencing chest pains and went to the emergency room, fearing she was having a heart attack. After two days of treatment Vaughan learned her chest pain had been the result of a panic attack. She ultimately reported back to work on Friday, but she began experiencing a panic attack and left work, after emailing her supervisor. When Vaughan returned to work the following Tuesday, she met with two supervisors, Kim Lynch and Debbie Pumphrey, and was terminated. According to Vaughan, she was told at this meeting that "it was not working out" due to her health problems and that she needed to take care of herself.

The Equal Employment Opportunity Commission brought this action asserting that Crain violated the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act of 2008. The complaint alleges that Crain failed to provide a reasonable accommodation for Vaughan and that it discharged her because of her disabilities. Crain has moved for summary judgment on both of the EEOC's claims. For the reasons that will be explained, the motion is denied.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

The ADA prohibits discrimination against a "'qualified individual with a disability' because of the disability." *Scruggs v. Pulaski Cnty., Ark.*, 817 F.3d 1087, 1092 (8th Cir. 2016) (quoting *Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 783 (8th Cir. 2012)).

Unless a plaintiff has direct evidence of discrimination, an ADA discrimination claim is judged under the three-part *McDonnell-Douglas* burden-shifting framework. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016). Under this framework, the plaintiff has the initial burden of showing that she was disabled within the meaning of the ADA, that she was qualified to perform the essential functions of the job, and a causal connection between an adverse employment action and her disability. *Id.* at 755. If the plaintiff meets her burden of establishing a prima facie case, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant provides such a reason for the adverse employment action, the burden shifts back to the plaintiff to show that the proffered reason is a pretext for discrimination. *Id.*

If there is direct evidence of disability discrimination, however, the *McDonnell Douglas* analysis does not apply. *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012). Direct

evidence is evidence that shows a specific link between the discriminatory animus and the adverse employment action, which is sufficient for a reasonable jury to find that an illegitimate criterion actually motivated the adverse employment action. *Id.* Thus, "direct" refers to the causal strength of the proof. *Id.*; *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc) (explaining that evidence that clearly points to the presence of an illegal motive would qualify as direct evidence). If direct evidence of discrimination exists, a plaintiff may get to the jury based on that evidence alone. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

In this case, Crain first disputes that Vaughan is disabled within the meaning of the ADA. Under the ADA, a person is disabled if he or she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Before the 2008 amendments to the ADA, courts strictly interpreted the terms "major life activities" and "substantially limits," creating a demanding standard for qualifying as disabled. *See Nyrop v. Independent Sch. Dist. No. 11*, 616 F.3d 728, 734 (8th Cir. 2010). The 2008 amendments, however, "broadened the definition of what constitutes a disability and rejected the strict standards" from before. *Id.* at 734 n.4; *see also* 29 C.F.R. § 1630.2(h). Now "substantially limits" is not demanding, and it "shall be construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(i).

Here, it is undisputed that Vaughan has been diagnosed with anxiety, depression, and panic attacks. Taking Vaughan's version of the facts as true, her panic attacks make her feel paralyzed, cause chest pain, and cause difficulty with her breathing, thinking, communicating with others, and reasoning. Document #30-4 at 1. Her anxiety causes her to have difficulty breathing and communicating and an inability to think coherently. *Id.* When she suffers from depression, she is unable to care for herself, communicate with others, or think coherently. *Id.* The ADA specifically

3

includes thinking, breathing, and communicating as "major life activities." 42 U.S.C. § 12102(2)(A) - (B); *see also* 29 C.F.R. § 1630.2(i)(2) ("In determining other examples of major life activities, the term 'major' shall not be interpreted strictly to create a demanding standard for disability."). Whether an individual's impairment "substantially limits" the identified "major life activity" is a question of fact for the jury. *Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012); *Goal v. Retzer Resources, Inc.*, 2010 WL 4867966, *4, 5:09-CV-00137 JLH (E.D. Ark. Nov. 3, 2010) ("This evidence creates a material question of fact as to whether Goal's impairment substantially limits a major life activity."); *Morrow v. City of Jacksonville, Ark.*, 941 F. Supp. 816, 823 (E.D. Ark. 1996) ("[T]he Court concludes that whether the plaintiff's [identified impairment] '*substantially* limits' her life activity of 'working' is a question of fact for the jury.").

Crain points out that Vaughan has been able to perform other demanding activities, such as handle her parents' estates. Crain also notes that Vaughan does not have panic attacks constantly. Crain further argues that Vaughan has testified that she has tried to work through a panic that occurred at work. But these facts, even if true, do not mean that Vaughan is not disabled under the EEOC laws. 29 C.F.R. § 1630.2(j)(1)(viii) ("An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment."); *id.* § 1630.2(j)(1)(vii) (if an impairment is episodic, it "is a disability if it would substantially limit a major life activity when active"); *id.* § 1630.2(j)(1)(ii) ("An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."). In light of Vaughan's testimony regarding the difficulty her impairments cause her, and Congress's intention to "broaden[] the definition of what constitutes a disability," a reasonable jury could find that Vaughan is disabled

4

within the meaning of the ADA. *Nyrop*, 616 F.3d at 734 n.4; *see also* 29 C.F.R. § 1630.2(j)(i) ("'Substantially limits' is not meant to be a demanding standard," and it "shall be construed broadly in favor of expansive coverage.").

Crain next argues that even if Vaughan is disabled, she could not have been fired because of her disability since Crain did not know about it. In response, the EEOC has presented the following evidence: on Tuesday Vaughan told her supervisor Pumphrey she had experienced chest pains on Monday; on Wednesday Vaughan told Pumphrey she had anxiety, depression, and had suffered a panic attack; on Friday Vaughan emailed Pumphrey before leaving work, saying "I can't do this" because she was "still hurting too bad"; on Friday Vaughan emailed another supervisor, Lynch, explaining that she had had a heart catheterization and she included a doctor's note in the email; and on Friday Vaughan emailed Lynch that she had left early because she "was having another panic attack." Document #30-6 at 13, 16; Document #28-8; Document #28-9. Taking all these facts as true, a reasonable jury could infer that, at the time Vaughan was fired the following Tuesday, Crain knew about her anxiety, depression, and panic attacks. Moreover, a jury could find that Crain had some knowledge of the extent of Vaughan's impairments, as they had caused her chest pain resulting in a heart catheterization as well as missing several days of work.

Finally, Crain argues the EEOC has no direct evidence of discrimination, and under the *McDonnell-Douglas* framework, the disability claim cannot survive.

Employer actions or remarks that reflect a discriminatory attitude, comments that demonstrate a discriminatory animus in the decisional process, or comments made by individuals closely involved in employment decisions may all constitute direct evidence of discrimination. *See King v. United States*, 553 F.3d 1156, 1161 (8th Cir. 2009). In contrast, "stray remarks in the

workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process do not constitute direct evidence." *Id.* at 1160 (citations and internal quotations omitted). Likewise, if employer comments are made with the intent of attempting to preserve and promote an employee, they are less likely to constitute direct evidence of a discriminatory animus. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006).

Here, Vaughan met with two supervisors on Tuesday, February 8, in order to discuss why she had left work early on Friday. Instead, she was fired. Vaughan has testified that at this meeting, a supervisor told her that "due to [her] health, it wasn't going to work out and [she] should take time for [her]self." Document #30-6 at 8. This comment[1] is direct evidence of discrimination. If a jury found that Vaughan is disabled, and it believed these facts, it could draw the inference that an illegitimate criterion – Vaughan's disability – actually motivated her firing. The supervisor's comment is a far cry from "stray remarks in the workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process." *See King*, 553 F.3d at 1160. Instead, the comment was made during the meeting in which Vaughan was fired, it was made by Vaughan's supervisor, and it relates directly to the decision to fire Vaughan. *See id.* at 1161. There is no reason to suspect that the suggestion that Vaughan should take care of her health or take time for herself was made "with the intent of attempting to preserve and promote" her, as she was fired in the same conversation. *Twymon*, 462 F.3d at 934. Thus, the EEOC has presented direct evidence of discrimination sufficient to take the case to the jury, so the Court need not address Crain's *McDonnell Douglas* argument. *See St. Martin*, 680 F.3d at 1033.

---

[1] Crain argues that the Court should not believe Vaughan's testimony about the comment because it is self-serving and because both supervisors present at the meeting have testified that the comment was not made. Whether to believe Vaughan or her supervisors is for the jury to decide.

Finally, Crain moves for summary judgment on the EEOC's claim that Crain failed to accommodate Vaughan. Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

Crain argues that the failure to accommodate claim fails because the discriminatory firing claim fails, but that claim does not fail. Crain next argues that it had no knowledge of Vaughan's disabilities, but as explained above, a jury could find that Crain was aware of Vaughan's disabilities. Finally, Crain argues that Vaughan never requested an accommodation as a disabled individual must do in a failure to accommodate case. *See* Document #27 at 12-14; *Schaffhauser v. United Parcel Service*, Inc., 794 F.3d 899, 906 (8th Cir. 2015) (explaining that a disabled employee "must alert his employer to the need for an accommodation and provide relevant details of his disability").

"Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation." *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir. 1999) (quoting 29 C.F.R. § 1630, App. § 1630.9). The Eighth Circuit has explained that in requesting an accommodation, a disabled employee is not required to use magic words like "reasonable accommodation," but must "make it clear to the employer that the employee wants assistance for his or her disability." *Id.* at 952 n.5. An employee need only "provide[] the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Kowitz v. Trinity Health*, 839 F.3d 742, 748 (8th Cir. 2016) (quoting *Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002)).

7

Here, Vaughan says that she emailed a doctor's note to Lynch, and that the doctor's note stated that she needed three weeks off work. Vaughan has produced the email in which she stated that a letter from her doctor was attached, and in which an attached note is visible, but unclear. Document #30-11. Lynch says she received the email but no doctor's note was attached to it. The Court must assume at this stage that Lynch received the doctor's letter. Given this fact, and given that Crain did not follow up whatsoever on what was contained in Vaughan's doctor's letter before firing her, the EEOC has generated a genuine dispute of fact on whether Vaughan requested an accommodation. *See Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 545-46 (8th Cir. 2018) ("Under the ADA, a request for 'a medical leave of absence might, in some circumstances, be a reasonable accommodation.'"). Because it is undisputed that Crain did not accommodate Vaughan, the failure to accommodate claim goes forward.

The motion for summary judgment is therefore DENIED. Document #26.

IT IS SO ORDERED this 11th day of April, 2019.

_J. Leon Holmes_
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE